## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WP COMPANY LLC** )<br>**d/b/a THE WASHINGTON POST**, )<br> )<br>    1301 K Street, N.W. )<br>    Washington, D.C. 20071 )<br> )<br>        Plaintiff, )<br> )<br>    v. )<br> )<br>**SPECIAL INSPECTOR GENERAL FOR** )<br>**AFGHANISTAN RECONSTRUCTION** )<br> )<br>    2530 Crystal Drive )<br>    Arlington, VA 22202, )<br> )<br>        Defendant. )<br> ) | Civil Action No. 1:17-cv-2114 |

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff WP Company LLC d/b/a *The Washington Post* ("the *Post*") brings this suit against Defendant Special Inspector General for Afghanistan Reconstruction ("SIGAR").   In support thereof, the *Post* states as follows:

### INTRODUCTION

1.     This is an action brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for declaratory, injunctive, and other appropriate relief.   The *Post* seeks the transcript of an interview of Lt. General Michael Flynn (U.S. Army, ret.), which was conducted as part of SIGAR's "Lessons Learned Program" relating to the war in and reconstruction of Afghanistan.

2.     In violation of FOIA, SIGAR has denied the *Post's* request for these records to which no exemption properly applies.

## PARTIES

3.      Plaintiff, the *Post*, is a news organization based in Washington, D.C.  It publishes the leading daily newspaper, by print circulation, in the nation's capital, as well as the website washingtonpost.com, which reaches more than 65 million unique visitors per month, according to independent auditor comScore. The *Post* has won 47 Pulitzer Prizes.

4.      Defendant, SIGAR, was created under Section 1229 of the National Defense Authorization Act for Fiscal Year 2008 (Pub. L. No. 110-181) to provide independent and objective oversight of Afghanistan reconstruction projects and activities.  SIGAR is an agency within the meaning of 5 U.S.C. § 552(f)(1).  SIGAR has possession and control of the records requested by the *Post*.

## JURISDICTION AND VENUE

5.      This action arises under FOIA.  This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) & (a)(6)(C)(i).  This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

6.      Venue is proper in this judicial district under 5 U.S.C. § 552(a)(4)(B).

## FACTUAL ALLEGATIONS

7.      The war in Afghanistan is the longest running armed conflict in U.S. history. More than 1,800 U.S. service members have been killed in action in Afghanistan since 2001.

8.      According to SIGAR, the U.S. has appropriated more than $100,000,000,000 for relief and reconstruction efforts in Afghanistan since 2002.  These funds have been used to build the Afghan National Security Forces, promote good governance, conduct development assistance, and engage in counter-narcotics and anti-corruption efforts, among other purposes.

9.      Congress created SIGAR in 2008 to provide independent and objective oversight

of Afghanistan reconstruction projects and activities.  The *Post* has reported on SIGAR's work

dozens of times since that office was created.[1]

        10.      According to its website, SIGAR carries out its congressionally-mandated

responsibilities in several ways.  First, its Audits and Inspections Directorate "conducts audits

and inspections of reconstruction activities in Afghanistan."  Second, its Investigations

Directorate "conducts criminal and civil investigations relating to programs and operations

supported with U.S. reconstruction dollars."  Third, its Special Projects team "examine[s]

emerging issues and deliver[s] prompt, actionable reports to federal agencies and the Congress."

And fourth, its Lessons Learned Program "identif[ies] and preserve[s] lessons from the U.S.

reconstruction experience in Afghanistan, and [makes] recommendations to Congress and

---

[1] *See, e.g.*, Max Bearak, *Afghan government controls just 57 percent of its territory, U.S. watchdog says*, The Washington Post (Feb. 2, 2017), https://www.washingtonpost.com/news/worldviews/wp/2017/02/02/afghan-government-controls-just-57-percent-of-its-territory-says-u-s-watchdog/; Erin Cunningham, *The U.S. spent billions building roads in Afghanistan. Now many of them are beyond repair*, The Washington Post (Oct. 30, 2016), https://www.washingtonpost.com/news/worldviews/wp/2016/10/30/the-u-s-spent-billions-building-roads-in-afghanistan-now-many-of-them-are-beyond-repair/; Dan Lamothe, *In Afghanistan, more multimillion-dollar buildings built and barely used by the U.S. military*, The Washington Post (July 20, 2015), https://www.washingtonpost.com/news/checkpoint/wp/2015/07/20/in-afghanistan-more-multi-million-dollar-buildings-built-and-barely-used-by-the-us-military/; Ernesto Londono, *Fire-prone buildings to be left at Afghan bases, watchdog for reconstruction warns*, The Washington Post (July 17, 2014), https://www.washingtonpost.com/world/national-security/fire-prone-buildings-to-be-left-at-afghan-bases-watchdog-for-reconstruction-warns/2014/07/16/ba8659b4-0d2c-11e4-8341-b8072b1e7348_story.html; Tim Craig, *U.S. contractors' failure to pay Afghans is causing grave problems, watchdog says*, The Washington Post (June 20, 2013), https://www.washingtonpost.com/world/asia_pacific/us-contractors-are-cheating-afghan-firms-workers-watchdog-says/2013/06/20/3f646e76-d9d2-11e2-9df4-895344c13c30_story.html; Karen DeYoung, *U.S. finds Afghan anti-corruption efforts 'deeply troubling'*, The Washington Post (Dec. 11, 2012), https://www.washingtonpost.com/world/national-security/us-finds-afghan-anti-corruption-efforts-deeply-troubling/2012/12/11/e0c57b80-43b3-11e2-8061-253bccfc7532_story.html; Richard Lardner, *2 deputies fired from Afghan watchdog group*, The Washington Post (Jan. 5, 2011), http://www.washingtonpost.com/wp-dyn/content/article/2011/01/04/AR2011010405254.html; Karen DeYoung, *Development aid in key Afghan province lacking in oversight, audit finds*, The Washington Post (Oct. 26, 2010), http://www.washingtonpost.com/wp-dyn/content/article/2010/10/26/AR2010102607140.html.

executive agencies on ways to improve our efforts in current and future operations."

11.     SIGAR's website further explains that the product of the Lessons Learned Project's efforts are the "Lessons Learned Reports," which "focus on key aspects of the reconstruction effort and document what the U.S. government sought to accomplish, assess what it achieved, and evaluate the degree to which these efforts helped the United States reach its strategic goals in Afghanistan."

12.     To date, SIGAR has publicly released four Lessons Learned Reports, the most recent of which is entitled "Reconstructing the Afghan National Defense and Security Forces: Lessons from the U.S. Experience in Afghanistan," published on September 21, 2017 (the "2017 Report"), and posted online at https://www.sigar.mil/pdf/lessonslearned/SIGAR-17-62-LL.pdf.

13.     The 2017 Report states that as part of SIGAR's information-gathering process, its "research team interviewed or held informal discussions with more than 100 individuals with direct and indirect knowledge of facts on the ground," including "U.S., Afghan, and other international experts from academia, think tanks, NGOs, and government entities; current and former  U.S. civilian and military officials deployed to Afghanistan; and personnel from intelligence agencies and the Departments of Defense, State, and Justice."  2017 Report at 200. The 2017 Report further explains that these "[i]nterviews provided valuable insights into the rationale behind decisions, the debates within and between agencies, and the frustrations that spanned the years, but often remained unwritten." *Id*.

14.     One of the many individuals interviewed by SIGAR as part of its Lessons Learned Project is Lt. General Michael Flynn (U.S. Army, ret.).  Lt. Gen. Flynn was at one point the senior U.S. military intelligence officer in Afghanistan before serving as head of the Defense Intelligence Agency.  Following his retirement from the military, Lt. Gen. Flynn became a senior

figure on the Trump presidential campaign, and after President Trump took office, Lt. Gen. Flynn briefly served as his National Security Advisor.

15.    On August 24, 2016, *Post* reporters Greg Miller and Craig Whitlock requested by email to SIGAR senior investigative counsel Christopher Staszak the following records:

> Transcripts, reports, audio recordings and video recordings of interviews conducted by SIGAR's Lessons Learned Program with Lt. Gen. Michael Flynn (U.S. Army, retired). . . . Please include any notes, tabs, emails, appendices or other documentation related to the interviews.

The *Post* also sought expedited processing of the request and a fee waiver as a representative of the news media.  A true and correct copy of the *Post*'s August 24, 2016 request (the "Request") is attached hereto as Exhibit A.

16.    The Request explained why records of SIGAR's interviews of Lt. Gen. Flynn (the "Interviews") were of significant interest and importance to the public.  At the time the Request was made, Lt. Gen. Flynn had become a top national security advisor to Donald Trump, who was by that point the Republican nominee for president.  Indeed, it was believed that Lt. Gen. Flynn would be appointed to a high-ranking administration position if Mr. Trump were to win the election.  The Interviews, which could provide insight into Lt. Gen. Flynn's experience with foreign policy and national security issues – including those particularly relevant to Afghanistan, such as counterterrorism strategy and U.S. relations with NATO – were therefore highly newsworthy.

17.    As of November 8, 2016, when Mr. Trump won the presidential election, SIGAR had not responded to the Request or to several follow-up inquiries about the Request, even though the Request had by then been pending for more than 70 days, already well past the twenty (20)-day deadline imposed by FOIA.  *See* 5 U.S.C. § 552(a)(6)(A).  Ten days later, Lt. Gen.

Flynn was named as then-President-elect Trump's National Security Advisor.

18.     In the weeks after the 2016 election, the *Post* repeatedly sought clarification from SIGAR as to when the Request would be processed.  At one point, in a December 6, 2016 email, SIGAR public-affairs specialist Jennifer George-Nichol told the *Post*, "I expect you'll have [a response] within the next week or two."  *See* Ex. C at 2.  But SIGAR did not officially respond until after President Trump was sworn into office.

19.     On January 24, 2017 – less than a week after Inauguration Day, and five months after the Request was submitted – SIGAR denied the Request in full.  Public Information Manager Stephen Kurylo, Jr. stated via email that a transcript of the Interview "is exempt from disclosure by Exemption (b)(5) of the FOIA, 5 U.S.C. § 552."  SIGAR's response did not address the *Post*'s requests for expedited processing and a fee waiver, or provide any indication why it had taken five months to reach the conclusion that the single document sought by the Request was exempt from disclosure.  A true and correct copy of SIGAR's denial of the Request is attached hereto as Exhibit B.

20.     The public interest in the Interviews has grown even greater since the Request was denied.  Lt. Gen. Flynn resigned as National Security Advisor on February 13, 2017, after only 24 days of serving in that role.  Lt. Gen. Flynn's tenure as National Security Advisor was accordingly the shortest in the 64-year history of the position.  Lt. Gen. Flynn has since become embroiled in various federal investigations into Russian interference in the 2016 election.

21.     Lt. Gen. Flynn's impressions and experiences about Afghanistan, as captured in the Interviews, are of particular interest to the public following President Trump's August 2017 decision to boost U.S. troop levels in Afghanistan.  That determination "to further commit to the nation's longest war, rather than withdraw, reflect[ed] a significant shift in [President Trump's]

approach to Afghanistan since taking office and mark[ed] a new willingness to take greater ownership of a protracted conflict that he had long dismissed as a waste of time and resources."[2]

22.    Pursuant to 5 U.S.C. § 552(a)(6)(A)(ii), on April 24, 2017, the *Post* filed an administrative appeal of the denial of the Request with SIGAR's Office of Privacy, Records, and Disclosures.  As that administrative appeal stated:

> SIGAR's decision to withhold LTG Flynn's interview in its entirety is both legally unjustified and, in these circumstances, contrary to public policy.  Legally, SIGAR's conclusory invocation of Exemption 5 is insufficient to overcome the standing presumption in favor of disclosure of public records under FOIA, particularly with respect to records that shed light on important government policies and actions.  As a matter of public policy, the failure to disclose the interview undermines the stated purposes of the "Lessons Learned Program" and ultimately harms the public interest.

A true and correct copy of the *Post*'s administrative appeal is attached hereto as Exhibit C.

23.    Despite FOIA's requirement that a determination be made with respect to any such appeal within 20 business days, 5 U.S.C. § 552(a)(6)(A)(ii), SIGAR did not respond to the *Post*'s administrative appeal until May 24, 2017.

24.    By letter sent on May 24, 2017, Adam J. Weaver of SIGAR's FOIA Appellate Authority informed the *Post* that "[b]ased on the information contained in your appeal and in response to your specific administrative request," the Request was being remanded back to SIGAR's Office of Privacy, Records, and Disclosure "for reconsideration of the basis for its determination concerning the requested interview, including specific applicable privileges."  The letter further stated that SIGAR "should provide a new determination no later than June 22,

---

[2] David Nakamura & Abby Phillip, *Trump announces new strategy for Afghanistan that calls for a troop increase*, The Washington Post (Aug. 21, 2017), https://www.washingtonpost.com/politics/trump-expected-to-announce-small-troop-increase-in-afghanistan-in-prime-time-address/2017/08/21/eb3a513e-868a-11e7-a94f-3139abce39f5_story.html.

2017." A true and correct copy of this letter is attached hereto as Exhibit D.

25.     As of the date of this filing, SIGAR has not substantively responded to the Post's

Request following that remand or produced any records responsive to the Request.

26.     There is no valid basis to withhold the records requested by the *Post* under FOIA.

## CLAIM FOR RELIEF

### COUNT I
**(Declaratory and Injunctive Relief:
Violation of the Freedom of Information Act, 5 U.S.C. § 552)**

27.     The *Post* realleges and incorporates by reference all previous paragraphs as if

fully set forth herein.

28.     FOIA provides this Court with "jurisdiction to enjoin [SIGAR] from withholding

agency records and to order the production of any agency records improperly withheld from [the

*Post*]." 5 U.S.C. § 552(a)(4)(B).

29.     The requested documents referenced above are agency records within SIGAR's

control.

30.     FOIA requires that within 20 working days of receiving a FOIA request, absent

circumstances not present here, an agency must notify a requester of, inter alia, the scope of the

documents that the agency will produce and the scope of the documents that the agency plans to

withhold under any FOIA exemptions. *See* 5 U.S.C. § 552(a)(6)(A)(ii).

31.     SIGAR's Office of Privacy, Records, and Disclosure received the *Post*'s Request

on remand from SIGAR's FOIA Appellate Authority on May 24, 2017. *See* Ex. C.

32.     Pursuant to FOIA, SIGAR was required to respond to the *Post*'s Request by June

22, 2017. 5 U.S.C. § 552(a)(6)(A)(ii).

33.     Nearly five months later, SIGAR has not provided any further substantive

response to the *Post*'s Request. Moreover, it has not produced any of the requested documents

8

or provided a timetable for production.

34.     There is no basis under FOIA to withhold the records requested by the *Post*, and SIGAR has therefore wrongfully withheld agency records in violation of FOIA.

35.     The *Post* has exhausted its administrative remedies with respect to SIGAR's failure to make a determination as to its Request and failure to produce the requested public records.  5 U.S.C. § 552(a)(6)(C)(i).

36.     The *Post* requests a declaratory judgment that SIGAR has violated FOIA and that the *Post* is entitled to immediately receive the documents referenced above.

37.     The *Post* further requests that, pursuant to 5 U.S.C. § 552(a)(4)(B), the Court issue an injunction to SIGAR to produce the requested agency records.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A.  Declare that SIGAR's failure to provide responsive documents is unlawful under FOIA;

B.  Enter an injunction that directs SIGAR to make all requested records available to the *Post*, unredacted, and without further delay;

C.  Provide for expeditious proceedings in this action;

D.  Award the *Post* its costs and reasonable attorneys' fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

E.  Grant such other and further relief as the Court may deem just and proper.

[SIGNATURE ON NEXT PAGE]

Respectfully submitted,

By:  /s/ Charles D. Tobin
      Charles D. Tobin (#455593)
      Adrianna C. Rodriguez (#1020616)
      Maxwell S. Mishkin (#1031356)
      BALLARD SPAHR LLP
      1909 K St., N.W., 12th Floor
      Washington, D.C. 20006-1157
      Telephone: 202-661-2200
      Facsimile: 202-661-2299

      *Counsel for Plaintiff WP Company LLC*
      *d/b/a The Washington Post*

Dated: October 12, 2017